UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| FREDERICK H. FISHER, III, | ) | |
| and KIMBERLY A. FISHER, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:04-cv-1317-LJM-WTL |
| | ) | |
| WERNER ENTERPRISES, INC., | ) | |
| and WILFREDO GUZMAN, | ) | |
| Defendants. | ) | |

### ORDER ON DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY OF STEPHANIE ARCHER AND MARIANNE LAWRENCE

This matter comes before the Court on Defendants', Werner Enterprises, Inc. ("Werner"), and Wilfredo Guzman ("Guzman") (collectively "Defendants"), Motion To Exclude Testimony of Plaintiffs' Experts, Stephanie Archer ("Archer") and Marianne Lawrence ("Lawrence"), under Rule 702 of the Federal Rules of Evidence. Plaintiffs Frederick H. Fisher, III ("Fisher"), and Kimberly A. Fisher ("Mrs. Fisher") (collectively "Plaintiffs" or "Fishers"), named Archer and Lawrence as testifying experts in this case, and Defendants seek to exclude their proposed testimony. The parties have fully briefed their arguments, and the motion is now ripe for ruling.

### I. BACKGROUND

In order to fully appreciate the issue before the Court, it is necessary to have some familiarity with the substance of the case. On April 13, 2003, at approximately 4:50 p.m., in Putnam County, Indiana, Fisher was operating a pickup truck that was pulling a recreational trailer. Comp. ¶ 2. At the same time, Werner Enterprises driver Wilfredo Guzman, acting within the scope of his

employment, was operating a tractor-trailer unit owned by Werner. *Id*. ¶ 4. Traveling eastbound on Interstate 70, because of slowing traffic, Fisher was forced to reduce the speed of his vehicle and come to a stop. Def.'s Exh. A at 157. Fisher was then struck from behind by the Werner truck. *Id*. at 154.

Following the accident, Fisher was transported via ambulance to Putnam County Hospital. Fisher underwent various treatment for complaints of pain in his neck, shoulder blades, back pain, occasional shortness of breath, and pain in his knees, right hip, and ankle. Fisher underwent a microdisectomy and laminectomy at L4-5, subsequently underwent physical therapy, and received steroid injections. Plaintiffs assert that Fisher has been rendered occupationally disabled from his plumbing business and that Mrs. Fisher has sustained a loss of consortium of her husband.

## II. EXPERT TESTIMONY STANDARDS

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. In *Daubert v. Merrell Dow Pham., Inc*., 509 U.S. 579 (1993), the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 146 (1999). "The basic approach to opinions, lay and expert, in these rules is to admit them

when helpful to the trier of fact."  Ad. Comm. Notes to Fed. R. Evid. 704.

### III. DISCUSSION

Plaintiffs plan to call Archer as an expert in the area of "vocational rehabilitation."  Pl.'s Disclosure of Expert Reports, No. 5.  In her report, Archer ultimately concluded that Fisher was "not currently a candidate for vocational rehabilitation" and that "his inability to work results in a loss of earnings over his lifetime estimated at $1,178,086."  Def.'s Exh. F.  Defendants claim that her opinions fail to satisfy the reliability and relevancy requirements of Rule 702 of the Federal Rules of Evidence, as established by *Daubert* and it's progeny, because (1) her opinions were based on outdated and irrelevant information, and (2) she is not qualified to testify regarding economic issues.

### A.  BASIS OF ARCHER'S EXPERT OPINION

Defendants point to the following evidence to support their position that Archer's expert opinion is based on outdated and irrelevant information, rendering such opinion "fatally flawed": 1) Since Archer's assessment of Fisher, he has received a second series of steroid injections treating the cervical and thoracic regions that, according to his own deposition, provided him with approximately 50% pain resolution in his neck and approximately 50% relief in his ability to breathe; 2) Archer's notation in her report that "if there is improvement with further treatment, Mr. Fisher should be reevaluated; and 3) Fisher's testimony that he was advised by a doctor to undertake vocational rehabilitation.  *See* Def.'s Exh A at 104-05; Def.'s Exh. F at 3; Def.'s Exh. A at 101-02.

As stated by the Supreme Court in *Kumho*, "where such testimony's factual basis, data, principles, methods, or their appplication are called sufficiently into question, . . . the trial judge must

3

determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho*, 526 U.S. at 137, 138 (quoting *Daubert*, 509 U.S. at 592). The Court concludes that Archer has a reliable basis for her expert opinion. True, the Court must determine whether it is "appropriate for [the expert] to rely on the test that he administered and upon the sources of information which he employed," but it is unnecessary to consider the "factual underpinnings" of the testimony. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (internal citations and quotations omitted). Defendants' argument and corresponding evidentiary citations may undermine the credibility of Archer's testimony, but it remains true that Archer is testifying based on specialized knowledge not otherwise available to the jurors and will provide them with helpful information in understanding the consequences of the injuries Fisher suffered on April 13, 2003. Archer's failure to consider every conceivable piece of evidence, including evidence available only after her assessment of Fisher, does not mean that she is without a reliable basis in the knowledge and experience of the relevant discipline. The proper means to challenge Archer's expert testimony is not to exclude her expert testimony altogether, but instead to challenge the accuracy, consistency, and credibility of Archer's expert opinions through vigorous cross-examination, presentation of contrary evidence, and argument of counsel.

### B.  ARCHER'S QUALIFICATIONS TO TESTIFY AS TO LIFELONG "LOSS OF EARNINGS"

Defendants also challenge a section of Archer's report entitled "Loss of Earnings," in which she purports to recount Fisher's earnings history and attains a loss of earnings figure of $1,178,086. *See* Def.'s Exh. F at 4. Defendants argue that Fisher is a vocational rehabilitation expert who has

been retained to "formulate an opinion concerning the impact of Fisher's injuries on his ability to obtain and maintain employment," *id*. at 1, and is not qualified to discuss Fisher's actual loss of earnings because the "relevant field is economics, not vocational rehabilitation." Def.'s Br. Supp. at 10. The Court agrees. *See e.g., Frazier v. Norfolk & W. Ry. Co.*, 996 F.2d 922, 925 (7th Cir. 1993) (finding a jury's award supported by the evidence based upon, *inter alia*, a vocational expert's testimony that the plaintiff would have difficulty finding and keeping a job with his permanent injury, and an economist's separate opinion as to his future lost wages).

Archer may not testify as to potential lifelong earnings calculations or other matters which necessitate the expertise of an economist. Considering Archer's status as a certified rehabilitation counselor and President of Creative Rehabilitation Management, her retention as a vocational rehabilitation expert is understandable. However, Archer's report strays into calculations of Fisher's lifelong "loss of earnings." Archer's curriculum vitae illustrates no experience with respect to economics or loss of earnings analyses.[1] *See* Def.'s Exh. G. To the extent Archer's opinions venture outside the realm of vocational rehabilitation and census data[2] indicating average wage figures for individuals in Fisher's line of work, the Court shall **EXCLUDE** such testimony.

### C. LAWRENCE'S EXPERT TESTIMONY

Defendants also challenge Plaintiffs' use of Lawrence's testimony. Lawrence's report has been provided by Plaintiffs to establish that Fisher would be denied health insurance with Anthem

---

[1] In fact, Archer herself admits that "I do not hold myself out to be an expert in economics." Archer Aff., ¶ 6.

[2] According to her report, Archer will utilize data accumulated by the United States Census Bureau's Current Population Survey. *See* Archer Aff., p. 2.

Insurance (or any other insurer) due to his accident-related condition. *See* Def.'s Exh. H at 1-2. Defendants contend that 1) Lawrence cannot be considered an expert in this matter and 2) that her testimony is irrelevant.

Defendants' latter argument is dispositive. Lawrence's opinions with regard to insurance coverage are irrelevant because, in his deposition, Fisher testified that he is insured by Midwest National of Tennessee, and he has no reason to believe his coverage will be discontinued in the future. *See* Def.'s Exh. A at 12-14. Accordingly, Defendants correctly assert the fact that testimony regarding Anthem's denial of coverage or his future uninsurability is irrelevant and would serve to prejudice Defendants when Fisher maintains a policy currently in place without foreseeable end. Plaintiffs' own argument reveals the speculative nature of the proffered testimony: "Lawrence's expert opinion . . . indcate[s] that Mr. Fisher's current condition will preclude him from obtaining new independent health insurance *should his needs so require*." Pl.'s Resp. Br. at 13 (emphasis added). Fisher's status as an insured renders testimony as to a future inability to obtain health insurance coverage speculative and irrelevant. Accordingly, the Court shall **EXCLUDE** Lawrence's testimony.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part, Defendants', Wifredo Guzman and Werner Enterprises, Inc., Motion to Exclude Expert Testimony. The testimony of Marianne Lawrence shall be **EXCLUDED**, and Stephanie Archer's testimony shall be **EXCLUDED** as to economic matters beyond vocational rehabilitation and census data on average wages of individuals in Fisher's line of work.

IT IS SO ORDERED this 25th day of August, 2005.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed to:

Robert D. Emmerson
STEWART & IRWIN
remmerson@silegal.com

Keith A. Gaston
STEWART & IRWIN
kgaston@silegal.com

Mark C. Ladendorf
LADENDORF & LADENDORF
mladendorf@iquest.net